Kelley *v.* Proctor.

## KELLEY *v.* PROCTOR.

Since the passage of chapters 1952 and 2090 Pamphlet Laws, removing the disqualification of interest in witnesses, a wife is not a competent witness to testify either for or against her husband, who is the party to a civil suit.

In impeaching a witness, by showing his generally bad reputation for truth, it must appear that the impeaching witnesses are acquainted with the general reputation of such witness for truth among his neighbors, before they are inquired of as to what that reputation is.

The particular form of the question is immaterial, if all the necessary facts be made to appear.

TRESPASS, for assault and battery. The defendant offered his wife as a witness for himself, but the court excluded her. One Farr had testified for the plaintiff, and the defendant had introduced several witnesses to impeach him, as showing that his general reputation for truth was bad. It appeared that said Farr lived in a small neigh-

borhood in Claremont, about four miles from the village in said town : that he attended church and did business at the stores and shops in said village. The plaintiff called a witness, who was a merchant in said village, who testified that he had been acquainted with said Farr fifteen years or more. The plaintiff's counsel asked said witness this question: "Are you acquainted with said Farr's reputation for truth ? " The defendant's counsel objected, and insisted that the question should be : "Are you acquainted with said Farr's reputation for truth in the vicinity or neighborhood where he resides ? " But the court overruled the objection, and allowed the question proposed to be answered. The witness replied that he was acquainted with said Farr's reputation—that it was good, and that he should believe him, &c.

To which ruling the defendant excepted.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, and the questions of law were assigned to the law term for decision. Some other minor questions were raised in the case, not important to be reported.

*Cushing*, for the plaintiff.

*Freeman & McClure*, and *Burke*, for the defendants.

SARGENT, J. In many of the elementary works, in speaking of the relations of husband and wife, and in stating the general rule that they cannot be witnesses for or against each other, the reasons for that rule are stated substantially as follows: They cannot be witnesses *for* each other, because their interests are absolutely the same, and thus both are alike excluded on the ground of interest; and they are not witnesses *against* each other, because it is contrary to the legal policy of marriage, or upon the ground of public policy. 1 C. & H. Phill. Ev. 77 ; Bull. N. P. 286.

Kelley *v.* Proctor.

Starkie says: The husband and wife cannot be witnesses *for* each other, for their interests are identical, nor *against* each other, on grounds of public policy, for fear of creating distrust, and sowing dissensions between them, and occasioning perjury. 2 Stark. Ev. 706.

It has been claimed that under our statutes of 1857 and 1858, which remove the disqualification of interest, so that the party can testify in his own case, that the wife may testify *for* her husband, though not *against* him, because the reason assigned before, why she could not testify for him, was merely her common interest with him, and that as interest is no longer a disqualification in the party, it should no longer be held to be so in case of the husband or wife, when the other is a party. Now if interest was the only ground upon which the husband or wife were before excluded from being witnesses for each other, there can be no doubt that the ruling of the court below was wrong, because our statutes have removed that as a disqualification in all cases. In *Merriam* v. *Hartford and New-Haven Railroad Company*, 20 Conn. 354, under a statute like ours, it was held that the wife was a competent witness for her husband. And *Storrs, J.* in delivering the opinion of the court, says: "It is said, however, that the reason for this exclusion is not founded wholly upon the identity of interest, but partly upon a principle of public policy, which deems it necessary to guard the confidence of married life, and that the statute, by its terms, applies only to cases where the interest of the party was the sole ground of exclusion. This argument, however, entirely fails, because that reason applies only where the husband and wife are called to testify against each other, and in such cases we admit that it has very great weight." He also holds that in legal contemplation, the husband and wife being one person, their interests are therefore identical, and that this is the ground, and the only ground of their exclusion by the

common law as witnesses for each other; and as it was the object of their law to remove the common-law disqualification of persons as witnesses, in all civil suits, by reason of their having an interest in the event of the same; that, therefore, the wife may be a witness in all civil cases *for* her husband, when he is the party, though she cannot be against him on grounds of public policy.

We also find that the provisions of the law of Connecticut of 1848, that "no person shall be disqualified as a witness in any proceeding at law, or in equity, by reason of his interest in the event of the same as a party or otherwise," were in that State adjudged to extend as well to proceedings in criminal as in civil cases, and accused parties on trial, as well as their wives, were admitted to testify. But this not being found to work well, in 1849 a law was passed repealing so much of the law of 1848 as authorized a party to any criminal proceeding to testify. *Lucas* v. *The State*, 23 Conn. 18.

But how is the wife to be allowed to testify for her husband without her being compelled to testify against him? Suppose her a witness in his favor, is she not to be allowed to be cross-examined? But if she is cross-examined, she will be very likely to be called upon to testify to something against her husband, and is the court to be required to interfere and prevent such cross-examination in all cases where an answer to the question proposed might lead her to state something against her husband's interest? Or is it to be held that owing to the peculiarity of her situation, she is to be allowed to state all she pleases in favor of her husband, and not be cross-examined at all? Such a course could not be tolerated.

We believe there are as sound and as sufficient reasons founded upon considerations of public policy, why a wife should not be allowed to testify for her husband, as there are why she should not testify against him. We believe that the true reason why a wife should not be allowed to tes-

Kelley *v.* Proctor.

tify either for or against her husband at common law, has always been a sort of compound reason, founded partly in interest, to be sure, and the identity of the persons, but partly also upon considerations of public policy; and that where the disqualification of interest has been removed by statute, as in this State, there still remains a good and sufficient objection to the husband or wife (not being the party to the suit) as a witness for as well as against the other, who is the party.

We think that considerations of public policy—the fear of sowing dissensions between man and wife, and of occasioning perjury, which Starkie alludes to as the reasons why a wife may not testify against her husband and *vice versa*—are equally satisfactory reasons why they should not be allowed to testify in each other's favor. It is to be feared that in some instances, if not in many, if it were understood that a wife could testify for her husband but not against him, where the husband has the misfortune to be litigious, and the still greater misfortune of being unprincipled, that the wife would find herself called upon, too often, to choose between her duty to her God and the requirements of, not to say her duty to, her husband; between violating the obligation of her oath, and incurring the displeasure of him whom she has promised to love, honor and obey.

The doctrine applicable to such cases is well stated in 2 Kent Com. 178. " The husband and wife cannot be witnesses for or against each other. This is a settled principle of law, and it is founded as well on the interest of the parties being the same, as on public policy."

Greenleaf says, in speaking of the relationship of husband and wife, " that neither of them is admissible as a witness in cases civil or criminal in which the other is a party." " This exclusion is founded partly on the identity of their legal rights and interests, and partly on principles of public policy which lie at the basis of civil

society." 1 Gr. Ev. sec. 334. *Stapleton* v. *Craft*, 10 E. L. & E. 455, was a case in which the principle involved in the case at bar was much discussed; where the wife of the defendant had been admitted as a witness for her husband in the court below, and a rule *nisi* for a new trial was obtained on the ground that this evidence had been improperly admitted under the 14th and 15th Vict., ch. 97, which it would seem contained similar provisions to those of our statute, removing the disqualification of interest. *Lord Campbell*, C. J., said: "You cannot make any distinction, in respect of admissibility, whether a wife is called for or against her husband." "One reason given for the exclusion of the wife of a party, is to preserve the the peace of families, and it is not rested merely on the ground of interest." *Wightman*, J., said: "The statute only intended to remove objections to the competency of witnesses on the ground of interest; and the reason for excluding the evidence in question, depends upon a much larger view of the relation existing between husband and wife. Therefore, on this ground, also, I think the testimony was wrongly admitted." *Crompton*, J., said: "It would be very dangerous to suppose that we can ascertain the precise origin of this rule of exclusion, and it is admitted that different reasons for it may be given, whether a wife is called for or against her husband. But it never could be the meaning of the statute to make a wife admissible in one case and not in another." *Earle*, J., dissented. This case is also reported in 18 Ad. & El. N. S. 367 (83, E. C. L.). In *Rex* v. *Sergeant*, 1 R. & M. 352 (21 E. C. L.), *Abbott*, C. J., said: "In the case tried before Lord Chief Justice Gibbs, to which I have alluded, the wife was called as a witness *for* her husband, and that learned Judge stated that he could see no distinction between admitting a wife for and against her husband; that the principle was exactly the same; and I entirely concur in his opinion."

Kelley *v.* Proctor.

We think that although, by the provisions of our statute, the identity of interest is no longer an objection to the wife being called as a witness for or against her husband, who is the party, yet that there remain in those principles of public policy, which lie at the basis of civil society, very good and satisfactory reasons why she should not be called in either case, or allowed to testify at all, where her husband is the party. The ruling of the court on this point must therefore be sustained.

It is said by *Upham,* J., in *State* v. *Howard,* 9 N. H. 485, that in impeaching a witness by showing that his general reputation for truth is bad, the proper questions to ask are: "What is the general reputation of the witness for truth and veracity?" and "From what you know of the general reputation of the witness for truth, would you believe him under oath as quick as you would men in general?" And it was said that wherever general evidence was given, impeaching the credit of a witness, the opposite party may go into a cross-examination to ascertain the grounds of the unfavorable opinion expressed; may interrogate the witness as to his opportunities of knowing the character of the impeached witness, &c. But we think that at the present time the uniform practice in this State is, and that it is a reasonable practice, first, to ask the impeaching witness whether he is acquainted with the reputation of the former witness for truth, or has the means of knowing the former witness's general character for truth; and we think that the authorities cited in *State* v. *Howard, ante,* warrant and require some such preliminary question before asking those there specified. Starkie, there cited, says the proper question to be put to a witness, for the purpose of impeaching the general character of another witness, is, whether he would believe him upon his oath. Phillips says the regular mode of examining into general character is to inquire of the witnesses whether they have the

means of knowing the former witness's general character, and whether from such knowledge they would believe him on his oath. 1 Phill. Ev. (2 Ed.) 292. Greenleaf says, the regular mode of examining into the general reputation is to inquire of the witness whether he knows the general reputation of the person in question among his neighbors, and what that reputation is. Swift lays down substantially the same rule as Greenleaf. Swift's Ev. 143. Greenleaf adds, that though the practice has prevailed in the English and American courts, to inquire further as to whether the witness would believe that person upon his oath, yet that the propriety of asking this last question has of late been questioned, and he suggests that the weight of modern authority is against permitting the witness to testify as to his own opinion. 1 Gr. Ev., sec. 461. And many high authorities are referred to by the author in the note which sustains his views. But no question is here raised upon that point. But it would seem that the practice of inquiring of the impeaching witness first, as to his acquaintance with the reputation of the other witness among his neighbors or in the vicinity where he lives, is in conformity with the weight of authority upon that subject.

In the case we are considering, it appeared that the witness was acquainted with Farr's reputation for truth, and from the other statements of the witness, it sufficiently appeared that he was acquainted with such reputation among said Farr's neighbors, for the people in the village were all near enough, and, as it would seem, had sufficient acquaintance and business intercourse with him to be properly called his neighbors. No doubt the form of the question, as insisted on by the defendant, is substantially correct. But .the form is not material, where the facts are all obtained that are requisite, and we think this was done in the case at bar. A person's reputation is not to be established or impeached by calling only a

certain number of his nearest neighbors, nor are witnesses to be confined to what is said of a man among a few of those who live nearest to him; but a man's neighborhood extends, for these purposes, as far as he is well known—as far as people are acquainted with him and his character. And whether this witness was acquainted with those who lived in said Farr's immediate neighborhood or not, and whether he knew what those few nearest neighbors might say about him or not, is not material. He evidently knew enough of his reputation among his neighbors to be competent to testify as to his character for truth and veracity. We, therefore, think that this exception must be overruled, and there must be

*Judgment upon the verdict.*